RECEIVED

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA SEP 1 9 2005
NORTHERN DIVISION

CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

| | |
|---|---|
| GUESTHOUSE HOTEL & SUITES, INC.,<br>Plaintiff/Counter Defendant,<br><br>v.<br><br>COMMAND MANAGEMENT<br>SERVICES, INC.,<br><br>Defendant/Counter Plaintiff. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 2:05-CV-0790-B

## ANSWER, DEFENSES & COUNTERCLAIMS

1.    Defendant Command Management Services, Inc. ("Command") denies the allegation in Paragraph 1 that "Defendants [sic] violated Plaintiff's contractual rights by breaching a contract." To the extent the remaining statements require an answer, Command denies those statements.

2.    Command denies the allegation in Paragraph 2.

3.    Command admits that it is a citizen of the State of Oregon, and is without sufficient information to admit or deny Plaintiff's citizenship.

4.    Command denies the allegation in Paragraph 4.

5.    Command is without sufficient information to admit or deny the allegation in Paragraph 5.

6.    Command admits the allegation in Paragraph 6.

7.    Command admits that the parties entered into a written contract, but denies that Command agreed to pay for a certain number of hotel rooms and meals on an annual basis. Furthermore, Command states that the Subcontract is a written document which is the best evidence


SCANNED
08 91905

of its contents.

8.    Command admits the allegation in Paragraph 8 that the initial contract was from March 1, 2003 to February 29, 2004.

9.    Command admits that Plaintiff was extended an option year on the initial contract.

10.    Command admits that Plaintiff was extended a second option year on the initial contract.

11.    Command admits that Plaintiff was extended an option year on the initial contract.

12.    Command admits that Plaintiff was extended a second option year on the initial contract.

13.    Command admits the allegation in Paragraph 13.  Furthermore, Command states that the Subcontract is a written document which is the best evidence of its contents.

14.    Command denies the allegation in Paragraph 14.  Furthermore, Command states that the Subcontract is a written document which is the best evidence of its contents.

15.    Command admits the allegation in Paragraph 15.

16.    Command denies the allegation in Paragraph 16.

17.    Command denies the allegations in Paragraph 17.

18.    Command denies the allegations in Paragraph 18.

19.    Command incorporates its answers in Paragraphs 1 through 18 as if fully set forth herein.

20.    Command admits the allegation in Paragraph 20.  Furthermore, Command states that the Subcontract is a written document which is the best evidence of its contents.

21.    Command denies the allegation in Paragraph 21.

22.    Command denies the allegation in Paragraph 22.

23.    Command denies the allegation in Paragraph 23.

Under the "WHEREFORE" clause, Command denies that Plaintiff is entitled to judgment against the Command.

## DEFENSES

1.    The Complaint fails to state a claim upon which relief can be granted.

2.    Command is not liable or indebted to plaintiff in any manner or for any sum.

3.    Plaintiff's claim is barred by waiver and estoppel.

4.    Plaintiff's claim is barred by Plaintiff's breach of contract.

5.    Plaintiff's claim is barred by the doctrine of unclean hands.

6.    Command reserves the right to assert any other defense that might be warranted by the evidence.

7.    Plaintiff's claim is barred by Plaintiff's failure to mitigate.

8.    Plaintiff's claim is barred by set-off.

## COUNTERCLAIMS

1.    On or about January 21, 2003, Command entered into a Subcontract for Services Agreement ("Subcontract") with Counter Defendant.

2.    On June 3, 2005, the Subcontract between Command and Counter Defendant was terminated by Command pursuant to Paragraphs 6 and 9 of the Subcontract, because of Counter Defendant's gross and chronic deficiencies in performance under the Subcontract.

3.    The Subcontract provides, *inter alia*, that:

> Subcontractor [*i.e.,* Counter Defendant] is obligated to provide full and complete performance in accordance with the specifications of this Agreement, to include all provisions for both lodging and meals which consistently meet the requirements of the U.S. Government.

> Further, the Subcontractor's facility must be co-located or within 200 feet of an approved dining and/or lodging establishment. <u>Should the [sic] either dining and/or lodging establishment fail to provide full and complete performance in accordance with contract specifications, and such failure becomes chronic or incurable, this subcontract agreement may be terminated</u>.

Subcontract, Ex. 1 ¶ 6 (emphasis added).

4.    The Subcontract further provides, *inter alia*, that:

> Contractor [*i.e.*, Command] requires Subcontractor [*i.e.*, Counter Defendant] to maintain a satisfactory level of cleanliness and customer service. Subcontractor is subject to ongoing Government and Contractor facilities inspections.

*Id.*, ¶ 9.

5.    A Performance Work Statement ("PWS") was incorporated by reference into the Subcontract.

6.    The PWS specifies that Counter Defendant will be subject to random inspections by the Government "to ensure that state and local health, sanitation and fire prevention standards are being maintained, and that accommodations and meals are being furnished in accordance with contractor's proposal." Ex. 1, PWS ¶ 1.10.1. It further provides that the Government will "monitor the contractor's performance in accordance with the Government's Quality Assurance Surveillance Plan (QASP)." *Id.* ¶ 1.10.3.

7.    Counter Defendant did not meet its obligations under the Subcontract, in accordance with, *inter alia*, Paragraphs 6 and 9 of the Subcontract, and the provisions of the PWS.

8.    In June of 2004, Counter Defendant failed its inspection report, and the Government found Counter Defendant's performance "unsatisfactory." Ex. 2 at 1.

9.    Specifically, regarding Counter Defendant's kitchen area, the Government found that: floors in the kitchen were dirty; ceiling tiles were broken, dirty and missing; walls had holes and the

trim needed replaced; steam tables contained old food; empty used cups and drinks were left on top

of the refrigerator; old dish rags were stored on the serving tables; crackers were stored on the floor

under the serving tables; rotten food was located on the floor and in the freezer area; dish towels

were left under the meat cutting block; the door on the toilet would not close; dirty table clothes and

food were under the tables; there were fruit flies located everywhere; there was grime and bugs on

the back tray of the oven; old dish rags were stored in the grill area; and the cover to the breaker box

was missing. *Id.*

10.     After Counter Defendant failed the kitchen inspection, Counter Defendant fired its

kitchen manager for her failure to perform her duties. Ex. 3.

11.     As a result of Counter Defendant's failed inspection in June 2004, the Government

issued to Command a Contract Discrepancy Notice concerning Counter Defendant's performance.

Ex. 4.

12.     Command was compelled to provide a written statement in response to the

Government's Contract Discrepancy Notice to avoid the Government terminating the prime contract.

*Id.*

13.     Despite Command's efforts to see that Counter Defendant complied with its contract

requirements, and despite Counter Defendant's statements that it would correct its many deficiencies,

in August of 2004, the Government again found Counter Defendant's performance to be

"unsatisfactory." Ex. 5.

14.     Specifically, the Government found: dirty floors; old food; utensils on the floor;

ceiling leaks in the coffee area and dry storage area; that the utility room in the kitchen was dirty,

with old rags; that the plunger was on the floor to hold up the storage door; food behind the ice

machine; that the ice scoop was moldy; that the ceiling needed repair and paint; old fruit peelings

under the freezer; that water was dripping into food containers; expired tuna salad dated over three months prior (*i.e.*, March 15, 2004); expired mayo dressing dated over two months prior (*i.e.*, May 4, 2004); uncovered food in the refrigerator; no dates on other food in the refrigerator; old food in the bottom of the refrigerator; paper and used knife stored in freezer container; that the shelves were dirty and contained spilled meat sauce; old food in the sink and drains; that the sink would not turn off; no towels in the dish wash area; no lights in the toilet and the toilet door would not close; water leaking in the dry storage hall from the pool; old ceiling with water dripping; old pot of cooking oil stored in the cooking area; grime and trash on top of the oven; old dish rag stuck in bottom area of the deep fryer; old grime and food in the deep fryer area; sides of the deep fryer needed cleaning; and wires on the kitchen air conditioning unit were exposed and dripping water. *Id.*

15.    In February 25, 2005, due to room inspection failures, Counter Defendant stated that is would: 1) provide new mattresses in 40 rooms; 2) remove existing wallpaper from walls, and seal and paint the walls with textured paint; and 3) replace old carpet with new carpet in 40 rooms. Ex. 6. These changes were never completed.

16.    On March 3, 2005, pursuant to the Subcontract, Command held an inspection of 28 guest rooms, the applicant lounge and the elevator. This inspection revealed that Counter Defendant maintained its premises in less than agreed upon conditions. For example, this inspection revealed that: there were holes in the walls of the guest rooms; windows were cracked; mattresses needed replacing; the rooms needed deep cleaning; wallpaper was peeling; there was mildew in the rooms; ceilings were falling; sinks were stained; shower values were broken; chairs were stained; door stoppers were missing; doors and ceilings needed painting; smoke detectors needed maintenance; emergency evacuation plans were missing; coat hangers were missing; the carpet was bad; ceiling tiles contained rust; and night stands needed replacing. Ex. 7.

17.    On March 21, 2005, Command inspected seven other rooms and found similar deficiencies. *See* Ex. 8.

18.    In April of 2005, Command's inspection of the kitchen area revealed that: Counter Defendant failed to change table clothes under the dispensers on a daily basis; chairs needed replacing; a wall needed repair; ceiling tile across from the ice machine needed replacing; the grease in the fryer needed replacing; oven racks needed cleaning; food processors needed cleaning; a light cover was hanging; and the fire extinguisher tags needed replacing, among other things. Ex. 9.

19.    On April 11, 2005, a Government inspection again resulted in an "unsatisfactory" rating of Counter Defendant's facilities.

20.    In or about March or April of 2005, Counter Defendant used a twin mattress on top of a full size box spring/frame, which created exposed metal on the bed frame. As a result, a guest of the hotel suffered a laceration from the exposed metal, and required stitches.

21.    On May 10, 2005, Command, along with Counter Defendant's General Manager Lynn Moody, inspected 30 guest rooms, and noted the following deficiencies: shower ring loose, and the tub needed a larger spout; toilet handle broken and the toilet was constantly running; screw caps were missing on several toilets; the grout around the toilets need repair; chairs and tables were dusty; carpet needed repaired around the A/C unit; wallpaper needed replacing around the tub; carpet was frayed; light switch plate was missing; wallpaper on top of shower needed repair; area around the door needed painting; and grout around plus needed repair. Ex. 10.

22.    That same day (*i.e.*, May 10, 2005), the kitchen was inspected and the following deficiencies were noted: kitchen freezer needed defrosting and cleaned; three containers with utensils needed to be emptied and cleaned; the refrigerator in the kitchen contained water from a leak (which was noted during the April 2005 inspection); the hot serving line needed cleaning; there was

a leak from the ceiling in the kitchen outside of the dry storage area, which resulted in damaged ceiling tiles; and a fire extinguisher was used as a door stopper (which was also noted in the April 2005 inspection). *Id.*

23.    Although the Government's performance rating for Counter Defendant dated May 11, 2005 was marginal, many items were found to be "unsatisfactory." These unsatisfactory items included: dressers/desks; heating and cooling devises; the bathrooms; the bathtubs and showers; the common areas; and the smoke alarms. Ex. 11.

24.    The Government's May 11, 2005 kitchen inspection also noted several items as "unsatisfactory." These included:  torn carpet in the dining area; open containers on the storage shelf; improper food containers; and burnt paper in the bottom of the deep fryer. *Id.*

25.    A subsequent Government inspection for the month of May 2005 rated the Counter Defendant as "unsatisfactory." Ex. 12.  The subsequent May 2005 unsatisfactory rating regarding the guest rooms was due to the dressers/desks; the linen service; the heating and cooling devices; the bathrooms; the commodes; the lack of hot water; and the common areas. *Id.*  The subsequent May 2005 unsatisfactory rating regarding the kitchen was due to the carpet and ceiling being in disrepair in the dining area; a ceiling leak in the kitchen; undated food in the refrigerator; open cheese and ground beef in the refrigerator; food open in the freezer; undated food in the freezer; molded bread; no dates on the open bread; dirty dishes in the sink; dirty sink water in a pail; dishes left in the dishwasher; food and grease in the deep fryer with no cover; and cleaning solvent in the kitchen area next to the grill. *Id.*

26.    The Defendant's performance failures and deficiencies were not isolated incidents, and were chronic, repeating, routine and continuous, despite prior inspection reports listing these failures.

27.    After Command terminated the Subcontract, Counter Defendant intentionally kept furnishings and equipment that is the rightful property of Command.

28.    Command has requested the return of the equipment and furnishings.

29.    Counter Defendant refused to return Command's property, and is wilfully and intentionally keeping the property in an attempt to collect money from Command.

30.    Indeed, on June 8, 2005, Jay Lewis, Esq., Counsel for Counter Defendant, wrote a letter to Command, which states in part:

> With regard to the furnishings and equipment belonging to your company, they will be released upon payment of the May, 2005, invoice which you will receive in due course.

31.    The value of the property wrongfully held by Counter Defendant is valued at not less than $28,136.95. *See* Ex. 13.

32.    Counter Defendant has wrongfully retained Command's property in known violation of the law and known violation of Command's rights to the property.

33.    Counter Defendant has wrongfully retained, interfered with, detained and used Command's property, with circumstances of insult, contumely, and malice.

## FIRST CLAIM
(Breach of Contract)

34.    Command incorporates Paragraphs 1 through 33 as if fully set forth herein.

35.    The parties entered into a valid Subcontract agreement.

36.    Counter Defendant failed to meet its obligation under the Subcontract, and hence breached the Subcontract.

37.    Command performed its conditions precedent under the Subcontract.

38.    Counter Defendant's breach caused damage to Command.

## SECOND CLAIM
(Declaratory Judgment)

39.   Command incorporates Paragraphs 1 through 38 as if fully set forth herein.

40.   Counter Defendant breached the Subcontract with Command.

41.   Command properly terminated the Subcontract with Counter Defendants, because of Counter Defendant's breach.

## THIRD CLAIM
(Conversion)

42.   Command incorporates Paragraphs 1 through 41 as if fully set forth herein.

43.   Command has requested the return of its property.

44.   Counter Defendant has refused to return Command's property.

45.   Counter Defendant has wrongfully taken Command's property.

46.   Counter Defendant is illegally using Command's property.

47.   Counter Defendant has wrongfully detained Command's property.

48.   Counter Defendant has wrongfully interfered with Command's property.

49.   Counter Defendant has wrongfully retained, interfered with, detained and used Command's property, with circumstances of insult, contumely, and malice.

**WHEREFORE**, Command respectfully demands judgment against Counter Defendant for:

1.   Compensatory damages sustained as a result of Counter Defendant's breach of contract, believed to be in excess of $50,000.00;

2.   A declaratory judgment stating that Counter Defendant breached its Subcontract with Command, and Command properly terminated the Subcontract due to Counter Defendant's breach;

3.   Damages caused by Counter Defendant's wrongful conversion of Command's

property, the value of which is not less than $28,136.95;

    4.    Punitive damages of not less than $100,000 for Counter Defendant's wrongful conversion of Command's property; and

    5.    Interest, costs and attorneys' fees, together with such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Defendant/Counter Plaintiff respectfully demands a jury trial on all issues triable by a jury.

Respectfully submitted,

Mark R. Mann, Esq.[1]
GRAYSON & KUBLI, P.C.
1420 Spring Hill Road, Suite 230
McLean, Virginia 22102
Ph. (703) 749-0000
Fax (703) 442-8672

Counsel for Defendant/Counter Plaintiff

---

[1] Application for admission *pro hac vice* has been filed contemporaneously with the filing of this pleading.

## CERTIFICATE OF SERVICE

I certify that on this _16th_ day of September 2005 a copy of the foregoing Answer, Defenses and Counterclaims were served via U.S. Mail, postage prepaid, upon:

Jay Lewis
Law Office of Jay Lewis
847 South McDonough St. Suite 100
Montgomery, Alabama 36104
Counsel for Plaintiff/Counter Defendant

_____
Vika Martin